## WILLIAM W. LAMB v. J. J. BURKE ET AL.

### APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 19, 1890—Affirmed at Bar.

1. In an action by an indorsee to recover from the maker of a negotiable note, the plaintiff cannot be required to show in his case in chief that he is a bona fide purchaser of the note for value before maturity, nor until there is evidence that it was obtained or put into circulation by a fraud upon the maker.

2. Testimony on the part of the maker that at the time the note was delivered to the payee, the latter received the maker's check for the same amount under a promise to repay to the maker the amount of the check as soon as the note was discounted, and that he failed therein, is insufficient to establish such fraud.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 36 January Term 1890, Sup. Ct.; court below, No. 432 March Term 1888, C. P.

On March 5, 1888, an appeal was entered from the judgment of a justice of the peace in an action by William W. Lamb against John J. Burke and James V. Burke, trading as Burke Brothers. Issue.

At the trial on May 24, 1889, the plaintiff put in evidence a note as follows:

$180.                              ASHLAND, PA., July 16, 1887.

Three months after date we promise to pay to the order of D. Williams, at the Citizens National Bank of Ashland, Pa., one hundred and eighty dollars, without defalcation, value received.

[signed]              Burke Brothers.

[endorsed]        D. Williams,
                  William W. Lamb.
            Credit, Eighth National Bank.
              J. A. Irwin, Cashier.

The plaintiff rested.

The defendants then introduced testimony to the effect, es-

sentially, that the note was given by the defendants for a bill of goods purchased; that, at the time it was given, the payee stated he was in need of money immediately and could not well wait till the note was discounted, and requested that Burke Brothers give him their check for $180, promising that he would return to them the amount of the check in a few days, as soon as he could get the note discounted. They showed further that the note was discounted, but the amount of the check was never sent to them as the payee had promised.

At the close of the testimony, the court, GREEN, J., charged the jury:

[So far as the evidence in this case is concerned, as to the putting of the note into circulation, there is no evidence at all of any fraud on the part of Williams in having the note discounted by the bank, because, in pursuance of the arrangement between himself and Burke Brothers, it was to be discounted. The only fraud there was in the transaction was that after Williams received the money from the discount of the note, he did not send the money back to Burke Brothers. That was a matter between them, which, of course, could not affect the party who had discounted and held the note. Whatever fraud or whatever bad faith there may have been between Williams and Burke Brothers, it could not affect the holder of the note.

The question has been presented here, whether this act of fraud and bad faith on the part of Williams would not have the effect of throwing the burden of proof upon the holder of this note, that is, upon Dr. Lamb, to show that he was a bona fide holder of the note for value. So far as that is concerned, we say that it would not have that effect, for the reason that the proof in this case does not go to show that the note was either fraudulently put into circulation, or that it was put into circulation by undue means. On the contrary, the burden of proof would fall upon the defendants to show that the plaintiff in this case is not a bona fide holder for value. The defendants would be bound to prove that fact.] [1]

[So far as the transaction between the Burke Brothers and Williams is concerned, there is no dispute here practically. It is testified to, not only by Mr. Burke, but also by Jesse Williams. So that there is really but one question in this case for

Charge of Court below.

you to try, and that is whether this plaintiff is a bona fide holder of this note. Is there sufficient evidence here to warrant a jury in finding that this plaintiff does not hold the note, or that he gave no value for it? That is practically the only question that is to be tried in this case.] [2]

You have, with regard to that, the testimony of the plaintiff, Dr. Lamb, and you have also the testimony of Jesse Williams with regard to the manner in which this note had been discounted. If you believe that testimony, then there can be no question at all as to what your verdict ought to be; it ought to be in favor of the plaintiff. Is there sufficient here for you to say that these witnesses do not tell the truth? Is there sufficient other testimony, in the case, to show that they do not tell the truth, or is there any statement with regard to what took place, of such a contradictory character as to convince you that what they say is not true?

[Was this note discounted, and did it pass out of the hands of Williams and into the hands of other parties before maturity? That is evident from the appearance of the note itself. You have here not only the note, but you have the indorsements on the note, of D. Williams and William W. Lamb, the signature of the cashier of the Eighth National Bank, and also the protest of the note on October 19, 1887. All this would go to show that this note had passed out of the hands of the firm of D. Williams, prior to its maturity; and if it had passed out of the hands of D. Williams prior to its maturity, and into the hands of other parties, then they would not be affected by any defence which Burke Brothers might have against the payment of the note to D. Williams, unless the parties who hold the note were either not bona fide holders, or had knowledge of the fraudulent manner in which the note might have been issued.] [3]

We have already said to you, there is no proof here that this note was fraudulently issued, so that it really comes down to the question whether or not the plaintiff is a bona fide holder of this note. If he is not a bona fide holder of this note, then he would not have any right to recover the amount of the note; but if he is a bona fide holder of the note, if he has paid value for it, if he is the owner of it, then the verdict ought to be in favor of the plaintiff. . . . .

Several points have been presented by the defendants which we will proceed to answer.

Arguments.

1. The defendants having shown that the note in suit was put in circulation by the payee in fraud of their rights, it is incumbent on the plaintiff to show that he acted fairly and is a bona fide holder for value before he is entitled to recover.

Answer: We cannot affirm this point, because the evidence does not show that the note was fraudulently put into circulation.[4]

2. The defendants having shown a complete and legal defence to the note in suit, if the same was in the hands of the payee, then the plaintiff is bound to establish by satisfactory evidence that he is a bona fide holder of the note for value.

Answer: We cannot affirm this point. The burden of proof is upon the defendants to show that the plaintiff is not a bona fide holder for value. The defendants are required to prove that; and until they do prove it, the plaintiff would be entitled to a verdict.[5]

3. If the plaintiff acted merely as an agent of the payee in getting the note in suit discounted for the use and benefit of the payee, and the payee received the profits, then the title of the plaintiff as such agent is infected with the defect of the principal's or payee's title, and consequently he cannot enforce the payment as against the maker.

Answer: This point we cannot affirm. The fact that the plaintiff indorsed the note and procured the bank to discount the note and give the proceeds to the firm of D. Williams, would not constitute him such an agent as would infect his title to the note with the defect of the principal's or payee's title.[6]

The jury returned a verdict in favor of the plaintiff for $199.47. A rule for a new trial having been discharged, judgment was entered, when the defendants took this appeal, assigning for error:

1–3. The portions of the charge embraced in [ ] [1 to 3]

4–6. The answers to the defendants' points.[4 to 6]

*Mr. J. F. Minogue* (with him *Mr. J. B. Reilly*), for the appellants.

Counsel cited: Kerr on F. & M., 49; Byles on Bills, 123, 124; Holme v. Karsper, 5 Binn. 469; Hutchinson v. Boggs,

Syllabus.

28 Pa. 294; Hoffman v. Foster, 43 Pa. 137; Hill v. Kroft, 29 Pa. 188; Reamer v. Bell, 79 Pa. 294; Robinson v. Hodgson, 73 Pa. 202; Gunnis v. Weigley, 114 Pa. 191; Porter v. Gunnison, 2 Gr. 297; Lenheim v. Wilmarding, 55 Pa. 73; Kuhns v. Gettysburg N. Bank, 68 Pa. 445.

*Mr. Phillip Keller*, for the appellee, was not heard.

In the brief filed, counsel cited: Sloan v. Union Banking Co., 67 Pa. 472; Bardsley v. Delp, 88 Pa. 420; Holme v. Karsper, 5 Binn. 471; Gray v. Bank of Ky., 29 Pa. 368.

PER CURIAM:
On the argument at Bar,

Judgment affirmed.